# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# COLUMBIA DIVISION

| | |
|---|---|
| James and Tanya DeWitt, | Civil Action No.: |
| Plaintiffs, | |
| vs. | **COMPLAINT** |
| United States of America, | |
| Defendant. | |

Plaintiffs, by and through their undersigned counsel, complaining of the Defendant, hereby allege as follows:

## JURISDICTIONAL ALLEGATIONS

1. Plaintiff James Dewitt (hereinafter "Mr. Dewitt") brings this claim against the United States of America (hereinafter "USA") for injuries and damages he sustained from substandard medical care rendered to him by agents and/or employees of the USA.

2. Plaintiff Tanya Dewitt (hereinafter "Mrs. Dewitt") brings a cause of action against the above Defendant for loss of consortium arising out of the injuries and damages suffered by her husband.

3. At all times relevant to this Complaint, both Plaintiffs were citizens and residents of Anderson County, South Carolina.

4. This action is brought pursuant to the Federal Tort Claims Act, 28 U.S.C. § 2671, et. seq. and 28 U.S.C. § 1346(b)(1), for money damages as compensation for injuries and damages suffered by Plaintiffs. As further described herein, these damages were caused by the acts of Defendants, their employees, servants, and/or agents. The employees, servants, and agents of the

USA were working at veterans' administration medical facilities, including, but not limited to, the William Jennings Bryan Dorn VA Medical Center (hereinafter "Dorn" or "Dorn VA") located in Richland County, South Carolina.

5.      Venue is proper in this Court in that all, or a substantial part, of the acts and/or omissions forming the basis of these claims occurred in the District of South Carolina, Columbia Division.  In addition, the claims in this action arose in part from acts of the USA through its employees, servants, and agents acting within the course and scope of their employment with the Department of Veteran Affairs at medical facilities in the State of South Carolina, including in Columbia, South Carolina.

6.      Plaintiffs has fully complied with the provisions of 28 U.S.C. § 2675 of the Federal Tort Claims act by giving formal written notice to the USA through the filing of a Form 95 with the Department of Veteran Affairs on October 31, 2019.

7.      Plaintiffs received a response on February 22, 2020 from Karen Phillips, a paralegal in the Medical Affirmative Claims departments of the Eisenhower Army Medical Center's Judge Advocate's office, referencing that the office had sent out documentation to be completed on February 21, 2019.

8.      Plaintiffs responded on June 18, 2020 to inform Ms. Phillips that her response was in error given that our Form 95 had not been filed until October 31, 2019 and to reiterate their request to a response to their Form 95 filing.

9.      Thereafter, Plaintiffs received a response on July 9, 2020 from Tina Person, a legal assistant in the US Department of Veterans Affairs Office of General Counsel, confirming receipt of the Form 95 and Plaintiffs to contact attorney Sarah Acosta.

10.     Plaintiffs did not hear any response regarding Ms. Acosta's investigation and sent an email regarding the status of the Form 95 investigation on January 26, 2021.

11. Ms. Acosta responded that she was on track to complete her investigation by next month and requested some additional documentation.

12. The additional documentation was provided on February 18, 2021 via email.

13. Plaintiff subsequently requested an update on the investigation on March 10, 2021 and March 16, 2021.

14. Ms. Acosta responded that she had completed the investigation and was ready to discuss with Plaintiff's attorney.

15. Settlement negotiations were unsuccessful.

16. Plaintiffs received confirmation on June 1, 2020 that Ms. Acosta would be issuing a denial letter.

17. An affidavit from a qualified medical expert in regard to Defendant is being contemporaneously filed with this Complaint. The affidavit sets forth certain breaches of the standard of care by Defendant, their agents and/or employees. Neither the affidavit, nor the allegations contained herein, are an all-inclusive list of negligence which will be attributed to Defendant, their agents and/or employees. Additionally, the type(s) and or description(s) of damages to Plaintiff and Decedent, as described herein, are/is not an all-inclusive list of damages suffered by them.

## FACTUAL ALLEGATIONS

18. These claims concern the substandard medical care provided to Decedent by agents, servants, and employees of William Jennings Bryan Dorn VA Medical Center in Columbia, South Carolina ("Dorn VAMC").

19. On Saturday August 18, 2018, Mr. Dewitt presented to the Dorn VA Medical Center complaining of pain associated with a sore on the bottom of his right foot.

20. Mr. Dewitt was seen by James Blackwell, NP who noted the patient was complaining of a non-healing sore to the right foot and that he was a diabetic. (Dorn 740).

21. Patient also stated that he regularly checked his feet due to him being diabetic. (Dorn 740).

22. Nurse Blackwell discharged Mr. Dewitt with a diagnosis of dry gangrene to the right foot, noted that a podiatry consult had been done, and to contact his medical provider if the patient had not heard from the podiatry clinic by Tuesday August 21, 2018. (Dorn 743).

23. Mr. Dewitt received no response from the podiatry clinic by Monday August 20th, so Mr. Dewitt attempted to contact the podiatry clinic but did not a call back.

24. Mr. Dewitt contacted the podiatry clinic on Tuesday August 21st and was informed that he had been given an appointment for Tuesday September 4th – more than two weeks after his initial ER visit.

25. Mr. Dewitt expressed his displeasure and shock at having the appointment set for a date so far in the future and expressed his desire to be seen immediately but was told that September 4th would be the earliest he could be seen.

26. Mr. Dewitt was finally able to be seen for a podiatry consult on September 4th and Lisa McLaurin, NP noted that his condition would require immediate transfer to the ER as the patient would require further urgent work up than what was available in the podiatry clinic. (Dorn 166).

27. The record reflects that by this time Mr. Dewitt was in significant pain, was observed rocking back and forth in his wheelchair due to pain, and that his right foot and leg were noted to have redness, swelling, and to be hot to the touch. (Dorn 166).

28. Mr. Dewitt was examined by podiatrist Michelle Glover, MD on September 5th. Dr. Glover diagnosed Mr. Dewitt with active wet gangrene and planned for an urgent incision and drainage ("I&D") surgery to remove any infected bone and/or tissue. (Dorn 679).

29. At the visit, Dr. Glover was upset and told the patient that "this is a serious case and I was not informed of your ER visit." Dr. Glover also told the patient that "I hope you are documenting this".

30. Dr. Glover performed the urgent I&D and debridement on September 5th eventually requiring the amputation of three toes and approximately ½ of Mr. Dewitt right foot (Dorn 775-76).

31. The surgical pathology determined that Mr. Dewitt had ulceration and necrosis of the soft tissue as well as necrotic bone marrow with acute osteomyelitis. (Dorn 56-57).

32. Dr. Glover saw Mr. Dewitt again on September 8th noting recent vascular study results indicating scattered and diffuse mild, moderate to severe calcifications in the lower extremity vessels. (Dorn 566).

33. Dr. Glover saw Mr. Dewitt again on September 11th noting the plan would be to transfer Mr. Dewitt to Eisenhower Medical Center for revascularization and right below the knee amputation. (Dorn 452-54).

34. Following the transfer to Eisenhower on September 11th, Mr. Dewitt underwent an above the ankle amputation of his entire right foot on September 12th. (Eisenhower 80-81).

35. On September 13th a RLE angiogram with stenting of his SFA and angioplasty of his popliteal artery was done to maximize the chances of recovery for future below the knee amputation ("BKA"). (Eisenhower 70).

36. The BKA was performed on September 17th. (Eisenhower 78-79).

37. Mr. Dewitt was returned to Dorn on September 19th with an admitting diagnosis of osteomyelitis with gangrene status post right BKA and endovascular stenting. (Dorn 59).

38. Mr. Dewitt was discharged from Dorn to short term rehab on September 25th at White Oak Manor in Spartanburg, SC. (Dorn 58-60).

## FOR A FIRST CAUSE OF ACTION
### (Medical Malpractice)

39. Plaintiff hereby incorporates by reference and re-alleges every allegation in Paragraphs 1 – 38 of this Complaint as if fully set forth herein.

40. Defendant USA and James Blackwell, NP, through its agents and/or employees, undertook the duty to render medical care to Mr. Dewitt in accordance with prevailing and acceptable professional standards of care in the national community.

41. Notwithstanding said undertaking, and while Mr. Dewitt was under the care of James Blackwell, NP and/or agents and/or employees of Defendant USA, Defendants departed from prevailing and acceptable professional standards of care in its treatment of Mr. Dewitt and was thereby were negligent, careless, grossly negligent, reckless, and in violation of the duties owed to him. As such, the USA is liable for one or more of the following acts of omission or commission, any or all of which are departures from the prevailing and acceptable professional standards of care:

- in failing to exercise the technical skills expected to be employed by a reasonably prudent medical doctor during the treatment rendered on 8/18/18 by failing to perform any kind of investigation into whether Mr. Dewitt may have been having any circulatory issues related to the gangrene, and

- in failing to properly consult a vascular surgeon when it was known or should have been known that the Mr. Dewitt was at risk of having circulatory issues related to the gangrene.

42. Additionally, Upon information and belief, Blackwell, more likely than not, either knew or should have known that the patient was at risk of having circulatory issues related to the gangrene and that failing to consult a vascular surgeon and/or do any kind of investigation into Mr. Dewitt's right leg circulation would needlessly increase the risk of harm for Mr. Dewitt.

43. A medical provider knowingly treating a patient that would needlessly increase the risk of harm would constitute a conscious failure to exercise due care.

44. Further, Blackwell's failure to consult a vascular surgeon and/or failure to perform any kind of investigation into whether Mr. Dewitt may have been having any circulatory issues related to the gangrene likely caused and/or significantly contributed to the amputation of Mr. Dewitt's right lower extremity below the knee and that this amputation, more likely than not, would have been prevented with proper care and treatment.

45. As a direct and proximate result of the acts and/or omissions as herein alleged of James Blackwell, NP and/or other employees of Dorn VA, Mr. Dewitt suffered the following damages in the past and will suffer these damages in the future:

   a. past medical expenses and future medical expenses that are reasonably certain to occur;
   b. past physical pain and mental suffering and future physical pain and mental suffering that are reasonably certain to occur;
   c. avoidable amputation of his right lower extremity;
   d. lost wages;
   e. loss of value of household services; and
   f. substantial loss and/or degradation of enjoyment of life.

46. Plaintiff, James Dewitt, is informed and believes that based on the allegations set forth herein, judgment should be rendered against USA for actual damages in such fair, just, and reasonable amounts as may be determined by a jury.

## FOR A SECOND CAUSE OF ACTION
### (General Negligence)

47.     Plaintiffs hereby incorporates by reference and re-alleges every allegation in Paragraphs 1 – 46 of this Complaint as if fully set forth herein.

48.     The medical providers employed by USA had a duty to exercise ordinary and reasonable care to ensure that no unnecessary harm would befall Mr. Dewitt while under their care.

49.     The statutory definition of medical malpractice found in section S.C. Code Ann. §15-79-110(6) does not impact a hospital or medical providers' ordinary obligation to reasonably care for patients with respect to nonmedical, administrative, ministerial, or routine care. Thus, medical providers are still subject to claims sounding in ordinary negligence.

50.     No expert testimony is necessary to aid a jury's determination of fault in a situation where a referral to a specialist provider does not provide the information relating to the seriousness of a patient's condition – namely in failing to include in the referral to the podiatry clinic the information of Mr. Dewitt's diagnosis of gangrene.

51.     If the jury were to determine that employees of USA failed to properly employ their administrative task of properly conveying the patient's history in a referral, then the jurors can easily understand that USA breached its duty of ordinary and reasonable care to ensure that no unnecessary harm would befall the patient without the need for expert testimony.

52.     As a direct and proximate result of USA's failures to properly perform its duties of ordinary and reasonable care to ensure that no unnecessary harm would befall the patient, Mr. Dewitt has suffered permanent injury, harms, and losses.

53.     Plaintiffs are informed and believe that, based upon the allegations set forth herein, judgment should be rendered against USA, for actual damages, in such fair, just and reasonable amounts as may be determined by a jury.

## FOR A SECOND CAUSE OF ACTION
### (Loss of Consortium)

54. Plaintiffs hereby incorporates by reference and re-alleges every allegation in Paragraphs 1 – 53 of this Complaint as if fully set forth herein.

55. As a direct and proximate result of the negligence, carelessness, gross negligence, recklessness, and departures from the professional standards of care by Defendant as noted above, Mrs. Dewitt as Mr. Dewitt's wife, suffered a loss of consortium. She is therefore entitled to an award of damages to compensate her for the loss of the society, comfort, companionship, and support of her husband. In addition, Mrs. Dewitt lost income by loss of earnings capacity via the necessity of providing extraordinary medical care for her husband. She is therefore entitled to an award of damages in an amount determined by a jury at trial.

56. Plaintiff, Tanya Dewitt, is informed and believes that based on the allegations set forth herein, that judgment should be rendered against USA for actual damages in such fair, just, and reasonable amounts as may be determined by a jury.

WHEREFORE, Plaintiffs respectfully prays for judgment against USA for actual damages and consequential damages in an amount to be determined by a judge (and/or jury) at trial, for the costs and disbursements of this action, and for such other and further relief as this Court deems just and proper.

Respectfully submitted,

**MCGOWAN, HOOD & FELDER, LLC**

s/Jay Wright
Jay F. Wright (Federal ID No.: 11819)
McGowan, Hood & Felder, LLC
135 Edinburgh Court, Suite 202
Greenville, SC 29607
T: (864) 252-4406
F: (864) 252-4480

jaywright@mcgowanhood.com

Greenville, South Carolina
June 9, 2021

10